# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
September 21, 2010 Session

## STATE OF TENNESSEE, EX REL. BILLIE JO FARRIS (SATTERFIELD)
### v.
## COLIN BRYANT

**Appeal from the Circuit Court for Blount County**
**No. E-19336      William D. Young, Judge**

**No. E2008-02597-COA-R3-CV - Filed February 24, 2011**

This appeal involves child support in a Title IV-D proceeding. In the parents' divorce trial, the father was not present, so income was imputed to him, and he was ordered to pay child support. In post-divorce proceedings, the State filed contempt petitions on behalf of the mother, alleging that the father was in arrears on his child support obligation. Orders were entered holding the father in contempt and ordering payments on the arrearage. The father filed a motion for modification of his child support obligation, asserting that his income was substantially less than the amount imputed to him, and that he had an additional minor dependent for whom he was required to pay child support. The trial judge denied the father's motion to modify his child support and sentenced him to jail for contempt. The father appeals the criminal contempt conviction and asserts that the trial court erred in refusing to modify his child support obligation. We vacate the criminal contempt finding and reverse the denial of the father's motion to reduce his child support obligation.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Vacated in Part, Reversed in Part, and Remanded**

HOLLY M. KIRBY, J.,, delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Robert E. Cooper, Attorney General and Reporter; Michael E. Moore, Solicitor General; and Warren A. Jasper, Senior Counsel, Nashville, Tennessee, for Plaintiff/Appellee, State of Tennessee *ex rel.* Billie Jo Farris (Satterfield).

Virginia A. Schwamm, Schwamm, Albiston and Smith, PLLC, Knoxville, Tennessee, for Defendant/Appellant, Colin Bryant.

# OPINION

## FACTS AND PROCEEDINGS BELOW

Plaintiff/Appellee Billie Jo Farris (Satterfield) ("Mother") and Defendant/Appellant Colin Bryant ("Father") were married and had two children, born in 1995 and 1998. Father has a high school education, and has primarily worked in various painting and remodeling jobs. For a period of about four years, apparently during the marriage, Father worked at a manufacturing company making more money than he had made in his painting jobs.

In September 2002, Mother filed a complaint for divorce. Father's *pendente lite* child support obligation was set at $129.92 per week.

In December 2002, the trial court entered a final decree of divorce. Mother was designated as the children's primary residential parent. Father apparently appeared *pro se* at the divorce trial, but did not submit any proof regarding his income. Consequently, pursuant to the child support guidelines in effect at the time, the trial court imputed income to Father in the amount of $25,761 per year. Accordingly, his child support obligation was set at $129.92 per week.[1] The trial court found that Father was in arrears on his child support in the amount of $1688.96, and granted Mother a judgment for this amount.

In April 2003, the State of Tennessee ("State")[2], appearing on behalf of Mother, filed a contempt petition against Father, alleging that he was in arrears in the amount of $2040.68 on his child support payments. Initially, Father could not be served with the summons. After he was finally served in June 2005, Father filed a uniform civil affidavit of indigency seeking appointment of counsel. On the affidavit, Father listed as dependents his two minor children with Mother, and also listed an additional dependent minor child.[3] The affidavit stated that he was unemployed. The trial court entered an order finding Father indigent, and appointing counsel for him.

---

[1]The final decree of divorce states that Father, "failed to submit proof of his income, and the Court, having no other means of determining his income, imputes his income in the amount of $25,761 annually, resulting in child support of $129.92 *per month* pursuant to the child support guidelines." However, this appears to be a typographical error; the trial court adopted Mother's permanent parenting plan, which provided for Father to pay child support in the amount of $129.92 per week, and Father's *pendente lite* child support, also based on imputed income, was in the amount of $129.92 per week.

[2]Mother was receiving Title IV-D services; therefore, the State was authorized to proceed on her behalf. T.C.A. § 71-3-124(c) (2004); 42 U.S.C. § 654(4) (2010); 45 C.F.R. § 302.33 (2010).

[3]The affidavit did not specify the age of Father's third minor child.

In October 2005, the trial court entered a consent order, finding that Father was in arrears in his child support payments in the amount of $17,560.20. Father was ordered to pay $130 per week toward his ongoing child support obligation, and $20 per week to catch up on the arrearage, for a total of $150 per week. The issue of contempt was reserved.

In January 2006, the State filed another contempt petition against Father for failure to pay child support. The petition asserted that Father had a child support arrearage of $18,220.20. In response, Father filed another affidavit of indigency, seeking appointment of counsel on the State's contempt petition. The affidavit listed the same three dependent minor children.[4] It stated that Father was employed by a pressure washing company and had an income of $320 per week. Father was not deemed indigent.

On May 15, 2006, Father filed a response to the State's contempt petition that included a motion to reduce his child support obligation. In response, Father admitted that his arrearages totaled $18,220.20, but denied that he was in willful contempt. The motion to reduce child support asserted that Father's income was "substantially less than the income imputed to him at the time the divorce decree was entered." Father's motion to modify his child support also noted that he had a third, younger child for whom he was required to pay support. Father sought dismissal of the State's contempt petition and a reduction of his child support payments for his children with Mother.

On the same day Father filed his response to the State's contempt petition, the trial court held a hearing on the contempt issue. It then entered a form order, finding "that based on the evidence and testimony received and the record as a whole," Father was "in willful contempt of court for failing to pay his child support." The child support arrearage was found to be $20,050.20. Father was again ordered to pay $150 per week, $130 per week toward his ongoing child support obligation to Mother's two children, and $20 per week toward the arrearages. The form order did not state expressly that Father was found in contempt, but expressly reserved Father's punishment for contempt. The order reserved Father's motion to reduce child support.

On October 15, 2007, a hearing was held on Father's motion to modify his child support obligation. On October 26, 2007, the trial court entered an order denying Father's motion to modify. The order stated that, based on the evidence and testimony received, the trial court deemed Father's motion "not well-founded and therefore dismissed."

---

[4]The affidavit listed Father's children with Mother as ten years old and seven years old, and the third dependent child was listed as two years old.

On November 26, 2007, Father filed a notice of appeal, appealing the order dated October 26, 2007, which denied his motion to reduce his child support obligation. On December 14, 2007, Father filed a proposed statement of the evidence, summarizing the evidence at the hearing on Father's modification motion. The record does not indicate that any objections to Father's proposed statement of the evidence were filed or that the trial court ruled on it.[5]

The Statement of the Evidence on the trial court's October 15, 2007 hearing on Father's motion to modify his child support states that, at the outset, counsel for Father and for the State each summarized their arguments and the evidence and testimony they expected to present. Father's counsel stated the following:

> a. Father's child support was originally set using Imputed Income pursuant to the Child Support Regulations in effect at the time.
> b. Father is self-employed and his actual income was less than the imputed amount at the time it was set and his current income continues to be less than the imputed amount.
> c. At the last hearing in 2006, Father was found in contempt for failing to pay his support but his request for modification was reserved.
> d. Father paid his support as ordered since the last hearing.
> e. Father had recently been adjudicated as the father of another child in Knox County and the Knox County Juvenile Court had set Father's child support for that child based on Father's current actual income.
> f. Father . . . propose[d] that [the trial court] adopt the income amount as determined by the Knox County Juvenile Court.

The Statement of the Evidence indicates that, in response, the State noted that Father still had an average income of some $18,000, and argued that the trial court was not required to adopt the finding of the Knox County Juvenile Court on Father's income.

The Statement of the Evidence states that the trial court then ruled:

> a. The [trial court] was not bound by the findings of the Knox County Juvenile Court;

---

[5]Rule 24(c) of the Tennessee Rules of Appellate Procedure allows an appellant to file a statement of the evidence where no transcript of the proceedings is available. The appellee may object within fifteen days. The trial judge then has thirty days in which to approve or disapprove the statement of the evidence. TENN. R. APP. P. 24(f). If the trial judge does not rule on the proposed statement within thirty days, it is "deemed to have been approved." *Id.*

b. Father would not be entitled to a modification in any event because he still had an arrearage and to allow a modification would be to reward someone with unclean hands.

Thus, no testimony was presented at the hearing, and the trial court summarily denied Father's motion for modification.

On February 27, 2008, the appellate court dismissed Father's appeal, finding that he had appealed an order that was not final and appealable. Even though Father appealed the October 26, 2007 order denying his motion to modify, the appellate court found that the matter was not final and appealable because the trial court's August 21, 2006 order on the State's contempt petition had reserved the issue of Father's punishment for the alleged contempt.[6]

Meanwhile, on February 26, 2008, the State filed another contempt petition against Father for failure to pay child support. Father filed another affidavit of indigency, listing three dependent children and stating that he was employed by "One Woman and a Pressurewasher" for $773 per month. The trial court found Father indigent and appointed counsel for him.

A hearing on the State's contempt petition was held on October 2, 2008. On October 14, 2008, the trial court entered a form order finding "that based on the evidence and testimony received and the record as a whole, that [Father] is underemployed and is in willful contempt for failing to pay his child support." Father was found to be in arrears in the amount of $21,495 on his child support obligation. He was again ordered to pay a total of $150 per week in child support, comprised of $130 for his ongoing child support and $20 per week on the arrearage. As punishment for contempt, Father was sentenced to ten days in jail.

---

[6]Father included the August 21, 2006 order on the State's contempt petition in his designation of the record on appeal, but stated that he was appealing only the trial court's denial of his motion to modify his child support obligation.

On November 13, 2008, Father filed a notice of appeal. After that, the parties filed competing statements of the evidence, which were ultimately resolved by the trial court.[7] The approved Statement of the Evidence on the October 2, 2008 hearing states:

> 1. [Father], through counsel, stipulated that he was in arrears in his child support payments in the amount of $21,495.20 as of the date of hearing.
>
> 2. [Father] testified as follows: That he lives with his mother; that he pays approximately $200.00 per month rent; $100.00 per month for electricity and water; $80.00 per month for fuel; and that he had had a cell phone until approximately three months prior to the hearing. He further testified that he worked for "One Woman and a Pressure Washer," doing remodeling and painting; and that he earned about $150-$180 per week. He testified that he had worked for this employer for over a year; that he had looked for other work at numerous places, to no avail. He testified that he had a high school diploma; that painting was the work he had done most of his life, with the exception of about four years when he was employed at Denso Manufacturing making more money. Further testimony included that he had no driver's license, having been convicted of a DUI and driving on a revoked license in another county, and that he still had a couple of tickets to pay. He further stated that he had another child support case in Knox County, Tennessee, and that he was also about $400 behind on that case as well.
>
> 3. Counsel for the State of Tennessee submitted argument that the Respondent had consistently fallen behind in his child support an average of $3500 per year; that the Trial Court could properly refuse to consider the [Father's] motion for modification if the Court found that the accumulation of arrearages were due to the fault and conduct of [Father]; and that, if Father] were not working many hours, he could spend more time looking for better/ additional employment, and was, therefore, willfully underemployed.

The Statement of the Evidence then states that the trial court found that Father was "capable of earning more than he was" and therefore that he was underemployed, and held that he was

---

[7]The appellate court entered a show cause order requiring Father to show cause why the appeal should not be dismissed for failure to comply with Tenn. R. App. P. 24, which requires the appellant to either file a transcript or a statement of the evidence, or a notice that no transcript or statement of the evidence will be filed. In response, Father filed a proposed statement of the evidence which incorporated by reference the statement of the evidence that he filed in the prior appeal. The State objected and filed its own proposed statement of the evidence. The State's proposed Statement incorporated the portion of Father's proposed Statement that recounted the trial court's findings. Thereafter, in response to a directive by the appellate court, the trial court adopted the State's proposed Statement of the Evidence.

in willful contempt of court. As noted above, the trial court sentenced Father to ten days in jail for contempt of court.

Father now seeks to appeal the trial court's orders dated August 21, 2006,[8] October 26, 2007, and October 14, 2008.

## ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Father raises the following issues:

I. The Trial Court erred in finding Father in willful contempt and wrongfully incarcerated Father.
A. The Petition filed by the State failed to state the essential facts constituting the criminal contempt charged, failed to describe it as such and failed to notify Father that the State sought incarceration as punishment.
B. The Trial Court failed to make any factual findings as to whether Father had the ability to comply with its orders to pay support.
C. The Trial Court failed to find that Father's failure to pay support was willful beyond a reasonable doubt.

II. The Trial Court's refusal to modify Father's child support obligation is contrary to the Child Support Guidelines.
A. The Trial Court's refusal to modify Father's child support obligation is contrary to the Child Support Guidelines because there has never been a Child Support Worksheet attached to any child support order in this cause.
B. The Trial Court's refusal to modify Father's child support obligation is contrary to the Child Support Guidelines because the Trial Court failed to acknowledge the "significant variance" presented by the existence of another child for whom Father had a court ordered child support obligation.
C. The Trial Court's refusal to modify Father's child support obligation finding him "willfully underemployed" is contrary to the Child Support Guidelines because the proof does not show

---

[8]Father's brief references August 16, 2006, but we presume this was a typographical error, as no order was entered on that date. An order holding Father in contempt was entered on August 21, 2006.

Father meets any of the Guidelines criteria for a finding of "willful underemployment."

D. The Trial Court's refusal to modify Father's ongoing child support obligation because Father owed an arrearage in child support is contrary to the Child Support Guidelines.

E. The Trial Court's continuing imputation of income to Father and refusal to modify Father's ongoing child support obligation is inconsistent with the Trial Court's finding that Father had less income than the 2005 and 2008 U.S. Department of Health and Human Services Poverty Guidelines.

We review the trial court's findings of fact *de novo* with a presumption of correctness unless the evidence preponderates to the contrary. *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005); TENN. R. APP. P. 13(d).

The issues regarding the sufficiency of the contempt notice given to Father present questions of law. Likewise, the issues regarding the legal standard utilized by the trial court in considering Father's request to reduce his child support obligation present questions of law. The trial court's legal conclusions are reviewed *de novo* with no presumption of correctness. *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996).

ANALYSIS

**Contempt**

Courts are authorized under Tennessee Code Annotated § 29-0-102(3) to find a person who willfully disobeys the court's order to be in contempt of court. T.C.A. § 29-9-102(3) (2000). In order to find that a party's failure to pay child support was contemptuous under Section 29-9-102, "the court must first determine that [the party] had the ability to pay at the time the support was due and then determine that the failure to pay was willful." *Ahern v. Ahern*, 15 S.W.3d 73, 79 (Tenn. 2000). For either civil or criminal contempt, the remedy can include incarceration. *Id.*; T.C.A. § 29-9-103(b).

How the trial court utilizes the remedy of incarceration indicates whether the contempt is deemed to be civil contempt or criminal contempt. With civil contempt, the court can incarcerate the individual in order to compel performance of the court's order. *Ahern*, 15 S.W.3d at 79. In effect, the contemnor "has the 'keys to the jail' and can purge the contempt by complying with the court's order." *Id.* (citations omitted). In contrast, "[p]unishment for criminal contempt is punitive in character; it is imposed to vindicate the authority of the law." *State ex rel. Everson v. Gooach*, 1990 WL 3976, at *1 (Tenn. Ct. App. Jan. 24, 1990). "It

is a punitive proceeding intended to impose a fixed punishment for past actions. Punishment for criminal contempt is not conditional and must be served, even if the contemnor later complies with the court's order." ***McLean v. McLean***, No. E2008-02796-COA-R3-CV, 2010 WL 210752, at *3 (Tenn. Ct. App. May 28, 2010) (quoting ***Jones v. Jones***, 1997WL 80029, at *2 (Tenn. Ct. App. Feb. 26, 1997)); ***see also Black***, 938 S.W.2d at 398.

In the instant case, Father seeks to appeal the trial court's contempt orders dated August 21, 2006 and October 14, 2008. The August 2006 order, entered in response to the State's contempt petition, holds Father in contempt of court for failure to pay child support, but reserves the issue of punishment. The order dated October 14, 2008, entered in response to another contempt petition by the State, holds Father in contempt for his continued failure to pay child support, but sentences him to serve ten days in jail. We find that the August 2006 order was in effect subsumed within the October 2008 order, and that the October 2008 order was entered for a continuation of the same allegedly contemptuous conduct, and so consider both orders together.

On appeal, the State asserts that the trial court found Father to be in civil contempt. This assertion is not supported by the record. It is clear that the contempt at issue in this case is criminal, not civil, contempt. The sentence of jail time was unconditional and unaffected by whether Father paid the child support arrearage. Therefore, we analyze the contempt orders under the standards for criminal contempt.

Although the defendant in a criminal contempt proceeding is not entitled to a jury trial or an initiation by indictment or presentment, "many of the constitutional protections afforded criminal defendant[s] must be observed." ***Brown v. Batey***, No. M2009-02020-COA-R3-CV, 2010 WL 3155189, at *3 (Tenn. Ct. App. Aug. 9, 2010). In particular, the alleged contemnor must be given notice in advance of the contempt hearing that complies with Rule 42(b) of the Tennessee Rules of Criminal Procedure. This Rule states:

> (b) **Disposition on Notice and Hearing**. A criminal contempt shall be prosecuted on notice . . . .
>
> > (1) *Content of Notice*. The criminal contempt notice shall:
> > (A) state the time and place of the hearing;
> > (B) allow the defendant a reasonable time to prepare a defense; and
> > (C) state the essential facts constituting the criminal contempt charged and describe it as such.

> (2) *Form of Notice*. The judge shall give the notice orally in
> open court in the presence of the defendant or, on application of
> the district attorney general or of an attorney appointed by the
> court for that purpose, by a show cause or arrest order.

TENN. R. CRIM. P. 42(b)(1) and (2).[9] This Court elaborated on these notice requirements in ***McLean v. McLean***, No. E2008-02796-COA-R3-CV, 2010 WL 2160752 at *1 (Tenn. Ct. App. May 28, 2010). The ***McLean*** court explained:

> Sufficient notice meeting the requirements of due process must be given as a prerequisite to a court's authority to punish a party for criminal contempt committed outside the presence of the court. ***Storey v. Storey***, 835 S.W.2d 593, 599-600 (Tenn. Ct. App. 1992). Under Tenn. R. Crim. P. 42(b), a person facing a criminal contempt charge must "be given explicit notice that they are charged with criminal contempt and must also be informed of the facts giving rise to the charge." ***Long v. McAllister-Long***, 221 S.W.3d 1, 13 (Tenn. Ct. App. 2006) (citation omitted). "Essential facts are those which, at a minimum, (1) allow the accused to glean that he or she is being charged with a crime, rather than being sued by an individual, (2) enable the accused to understand that the object of the charge is punishment- not merely to secure compliance with a previously existing order, and (3) sufficiently aid the accused to determine the nature of the accusation, which encompasses the requirement that the underlying court order allegedly violated by the accused is itself clear and unambiguous." ***Id***. at 13-14.

***McLean***, 2010 WL 2160752 at *5.

On appeal, the State asserts that Father was given notice that complied with the requirements of Tenn. R. Crim. P. 42(b). Again, this assertion is not borne out by the record. Here, the notice provided to Father consisted of the State's successive petitions for contempt, the summonses to the hearings, and the notice informing Father than an attorney could be appointed for him. Both contempt petitions stated only that the State was asking that Father "be found to be in willful contempt and punished accordingly." The only relief specifically requested was a judgment for the child support arrearage, and an income assignment. The summonses informed Father of the hearing date, instructed him to appear at the hearing, and

---

[9]These notice requirements apply to indirect criminal contempt. For direct criminal contempt, such as disruptive or disobedient acts committed in the court's presence, the court may impose summary punishment if necessary. ***McLean v. McLean***, No. E2008-02796-COA-R3-CV, 2010 WL 2160752, at *9 (Tenn. Ct. App. May 28, 2010).

told him to provide proof of income or risk a default judgment. The indigency notice stated: "If you should be found to be in contempt of this Court, the Court could sentence you to a term in the county jail, or impose a fine upon you, or both."

We find that neither the form nor the content of the notice provided to Father complies with Tenn. R. Crim. P. 42(b). Simply notifying Father that the trial court might sentence him to jail time is not sufficient, as incarceration may be used in connection with either civil or criminal contempt. *Ahern*, 15 S.W.3d at 79; T.C.A. § 29-9-103(b). As noted in *McLean*, the contempt notice provided did not allow Father "to glean that he . . . [was] being charged with a crime," and that the object of the contempt charge was punishment rather than compliance. *McLean*, 2010 WL 2160752, at *5.

The State argues that the issue of notice was waived by Father because it was not raised to the trial court. Assuming, without finding, that such due process protections can be waived, we note that the first indication that the October 2, 2008 proceedings involved criminal contempt was the entry of the October 14, 2008 order, which imposed an unconditional jail sentence of ten days, with no opportunity to purge the contempt. The State's argument is without merit.

We therefore conclude that Father was not provided the requisite notice under Tenn. R. Crim. P. 42(b) that he was being charged with criminal contempt. On this basis, we must vacate the trial court's August 2006 and October 2008 orders holding Father in criminal contempt of court. This holding pretermits the other issues raised by Father regarding his contempt convictions.

## Modification

On appeal, Father argues that the trial court erred in denying his motion to reduce his child support obligation. Father contends that there is a "significant variance" in the form of an after-born dependent minor child, and that the evidence does not support a finding of willful underemployment. He asserts that the trial court erred in refusing to modify his child support obligation, because Father had an existing child support arrearage, and that the trial court was required to use a child support worksheet in determining Father's child support obligation.

In response, the State simply maintains that the trial court did not abuse its discretion.

We consider the record based on Father's Statement of the Evidence regarding the October 15, 2007 hearing on Father's motion to reduce his child support. Because there were no objections by the State to Father's proposed Statement of the Evidence and the trial court did not rule on it, Father's proposed Statement of the Evidence is "deemed to have been

approved" by the trial court as the record of the October 15, 2007 hearing. TENN. R. APP. P. 24(f). We also consider the Statement of the Evidence on the October 2, 2008 hearing, as approved by the trial court under Tenn. R. App. P. 24.

As we have observed, "[t]he fairness of a child support award depends on an accurate determination of both parents' gross income or ability to support." *Massey v. Casals*, 315 S.W.3d 788, 795 (Tenn. Ct. App. 2009). In most situations, the parent's actual gross income is deemed to be equivalent to his earning capacity or ability to support. *Id.*

In this case, Father's original child support obligation was set based on imputed income, because Father, unrepresented at the divorce trial, presented no proof regarding his income. The child support guidelines provide that the imputation of income is appropriate in two circumstances, namely, where the court has not been provided reliable evidence of the obligor parent's income, or where the obligor parent is willfully or voluntarily underemployed. *Id.* (citing TENN. COMP. R & REGS. 1240-02-04-.04(3)(a)2(i)(I) and (II) (2009)). Clearly, imputation of income to Father at the divorce trial was appropriate because he failed to provide the trial court with reliable evidence of his income.

The child support guidelines also provide that, where child support has been set based on imputed income, the obligor parent may seek to modify the existing child support order by providing reliable evidence of his income, even in the absence of a "significant variance" that would otherwise be required. The regulation states that, when modifying an existing order:

> . . . upon motion to the tribunal . . ., the parent may provide the reliable evidence necessary to determine the appropriate amount of support based upon this reliable evidence. Under this circumstance, the parent is not required to demonstrate the existence of a significant variance otherwise required for modification of an order under 1240-2-4-.05.

TENN. COMP. R & REGS. 1240-2-4-.04(3)(a)2(iv)(III) (2009). Thus, even where there is no "significant variance,"[10] an obligor parent such as Father, whose existing child support obligation is based on income that was imputed for lack of reliable evidence of income, may

_____

[10]The child support guidelines elsewhere state: "Unless a significant variance exists, as defined in this section, a child support order is not eligible for modification. . . ." TENN. COMP. R & REGS. 1240-2-4-.05(2)(a) (2009). The term "significant variance" is defined in pertinent part as either "[a]t least a fifteen percent (15%) change in the gross income" of the obligor and/or "[a] change in the number of children for whom the [obligor parent] is legally responsible and actually supporting." TENN. COMP. R & REGS. 1240-2-4-.05(2)(b)1 and 2 (2009).

ask the trial court to prospectively "re-set" his child support, if he furnishes the trial court reliable evidence of his income.

In this case, Father had an additional basis for modification of his child support: an additional minor child, for whom he was paying support, born after entry of the divorce decree. A change in the number of dependent minor children is, of course, included within the circumstances that constitute a "significant variance" under the child support guidelines. TENN. COMP. R & REGS. 1240-2-4-.05(2)(b)2 (2009).

Against this backdrop, we consider the proceedings at the October 15, 2007 and the October 2, 2008 hearings. At the October 2007 hearing on Father's motion to reduce his child support, Father's counsel informed the trial court that he intended to present proof that Father's actual income was substantially less than the amount imputed to him, and that he had a third child, born after the divorce, for whom he was paying child support. Without hearing any evidence, the trial court ruled that it would not reduce Father's child support obligation "because he still had an arrearage and to allow a modification would be to reward someone with unclean hands."

Thus, the trial court apparently did not permit proof at the hearing, and denied Father's motion to modify, because Father had a child support arrearage. The child support guidelines address this issue, stating that a tribunal faced with a motion to modify an existing child support order

> . . . shall not refuse to consider modification of a current support order relating to the payment of prospective support on the basis that the party requesting modification has accumulated an arrears balance, unless the arrearage is the result of the intentional actions by the party.

TENN. COMP. R & REGS. 1240-2-4-.05(4) (2009). Thus, under the guidelines, the trial court was not permitted to deny Father's motion to modify based on the mere existence of an arrearage. As the trial court heard no evidence, there was no basis for the trial court to conclude that Father's arrearage was the result of his "intentional actions." Therefore, under the guidelines, the trial court erred in rejecting out of hand Father's motion to modify his child support obligation simply because he had a child support arrearage.

Likewise, we find that "the ancient and venerable clean hands doctrine" is not applicable under these circumstances. *Rodgers v. Rodgers*, No. E2003-01902-COA-R3-CV, 2004 WL 1299902, at *2 (Tenn. Ct. App. June 11, 2004). The doctrine derives from the equitable maxim stated succinctly in the treatise, GIBSON'S SUITS IN CHANCERY: "He who comes into equity must come with clean hands." *Segal v. United American Bank*, No. W2004-02347-

-13-

COA-R3-CV, 2005 WL 3543332, at *4 (Tenn. Ct. App. Dec. 28, 2005) (citing *Thomas v. Hedges*, 183 S.W.2d 14, 16 (Tenn. Ct. App. 1944) (quoting HENRY R. GIBSON, GIBSON'S SUITS IN CHANCERY, 42 and 51 (William E. Baldwin 1937) (1891)).[11]  The principle behind the doctrine of unclean hands has been described as follows:

> The principle is general, and is one of the maxims of the Court, that he who comes into a Court of Equity asking its interposition in his behalf, must come with clean hands; and if it appear from the case made by him . . . that he has himself been guilty of unconscientious, inequitable, or immoral conduct, in and about the same matters whereof he complains of his adversary, or if his claim to relief grows out of, or depends upon, or is inseparably connected with his own prior fraud, he will be repelled at the threshold of the court.

*Coleman Management, Inc. v. Meyer*, 304 S.W.3d 340, 351-52 (Tenn. Ct. App. 2009) (quoting *Continental Bankers Life Ins. Co. of the South, Inc. v. Simmons*, 561 S.W.2d 460, 465 (Tenn. Ct. App. 1977) (citations omitted). *See also* HENRY R. GIBSON, GIBSON'S SUITS IN CHANCERY § 2.09 (William H. Inman ed., Matthew Bender & Co. 2004 (1891).  The doctrine of unclean hands is invoked to protect the integrity of the Court, to prevent an affirmative grant of equitable relief in aid of one who acted fraudulently, immorally or inequitably in the matter on which he seeks relief.  30A C.J.S. *Equity* § 109 (2010); *Coleman*, 304 S.W.3d at 352-53.  Generally, it is not applicable to an action of law.  *Id.* at 352; *Emmit v. Emmit*, 174 S.W.3d 248, 253 (Tenn. Ct. App. 2005); *Dean v. Estate of Stanley*, No. E2006-02570-COA-R3-CV, 2007 WL 2126359, at *4 (Tenn. Ct. App. July 25, 2007).  To support application of the doctrine, there must be proof of conduct that is unconscionable, inequitable, or immoral.  *McDonnell Dyer P.L.C. v. Select-O-Hits, Inc.*, No. W2000-00044-COA-R3-CV, 2001 WL 400386, at *11 (Tenn. Ct. App. Apr. 20, 2001).

Here, Father did not seek equitable relief and did not seek erasure of his existing arrearage; he sought prospective relief pursuant to Tennessee statutes and the child support guidelines, to reduce his child support payments going forward.  Certainly there was no proof of conduct that was unconscionable, inequitable or immoral; indeed, there was no proof at all.  We find that the trial court abused its discretion in relying on the clean hands doctrine to summarily

---

[11]The doctrine was described by the Tennessee Supreme Court in the early 1800s as follows:

> If a complainant's cause of action originates in iniquity, although he may have the right, as against his antagonist, the court of chancery will turn him out without relief, because it will not give its aid to the establishment and enforcement of a right so stained with sin.

*Segal v. United Am. Bk.*, No. W2004-02347-COA-R3-CV, 2005 WL 3543332, at *5 (Tenn. Ct. App. Dec. 28, 2005) (quoting *Goodwin v. Hunt*, 1832 WL 1108, at *1 (Tenn. Err. & App. March 1832)).

deny Father's motion. Under these circumstances, the trial court was required to permit Father to put on proof in support of his motion to modify and to consider his request on its merits, and it erred in refusing to do so.

As reflected in the approved Statement of the Evidence, at the trial court's October 2008 hearing, Father was permitted to put on proof in defense against the State's contempt petition. At the hearing, Father testified that he has a high school education, that he had worked painting and remodeling jobs most of his life, "with the exception of about four years when he was employed at Denso Manufacturing, making more money." At the time of the hearing, he was making $150-$180 per week. He had no driver's license because of an earlier DUI conviction, and was living with his mother. In addition to his two minor children with Mother, Father testified that he had an additional minor child for whom he also had a child support arrearage.

The Statement of Evidence indicates that, at this hearing, the trial court also considered Father's motion to modify his child support; the Statement of the Evidence says that the State argued that "the Trial Court could properly refuse to consider [Father's] motion for modification if the Court found that the accumulation of arrearages was due to the fault and conduct of" Father.[12] The State also argued that Father was willfully underemployed because, if he "were not working many hours, he could spend more time looking for better/additional employment."

After considering this proof, the trial court found that Father was "capable of earning more than he was" and so was "underemployed." It found him to be in willful contempt of court and implicitly denied his motion to reduce his child support.

We note first that there is no indication in the Statement of the Evidence that the reliability of Father's proof of his *actual* income was questioned. Moreover, there was no proof of a lavish lifestyle or other indicia of undisclosed income.[13] The trial court's order did not indicate that it found Father's testimony of his actual income not credible. Therefore, the evidence establishes that Father's actual gross income was no more than $180 per week. This is considerably less than the income imputed to Father in the divorce. His current child support is, of course, based on this imputed income. Likewise, it appears undisputed in the

<hr/>

[12]It is unclear whether the trial court was reconsidering Father's prior written motion for modification or whether Father orally renewed his motion to modify at the October 2008 hearing.

[13]The State argues that the fact that Father had a cell phone up until three months prior to the ultimate hearing in this matter constitutes proof of a lavish lifestyle. This argument is without merit.

record that Father has an additional minor child, born after the divorce, for whom he pays child support.

Under these circumstances, we find that Father made out a *prima facie* case for reducing his child support obligation. "Once an obligor parent makes out a *prima facie* case for modifying his . . . child support, the burden shifts to the custodial parent to prove that the requested modification is not warranted" under the child support guidelines. ***Chorost v. Chorost***, No. M2000-00251-COA-R3-CV, 2003 WL 21392065, at \*6 (Tenn. Ct. App. June 17, 2003) (citation omitted). "If the custodial parent fails to rebut the obligor parent's *prima facie* case, the court must modify the obligor's parent's child support obligation." ***Id.*** Here, the State, on behalf of Mother, sought to rebut Father's *prima facie* case by proving that he was willfully underemployed; the trial court found that he was willfully underemployed, and denied the motion to reduce his child support on that basis. We therefore consider the trial court's finding of willful underemployment.

This Court has previously discussed willful underemployment:

> In certain limited situations, . . . the Guidelines provide that a court may "impute" income to a parent, that is, assign or attribute an income level to a parent that may not reflect the parent's actual gross income. This is based on the premise that parents may not avoid their financial responsibility to their children by unreasonably failing to exercise their earning capacity. Thus, the Guidelines state that income may be imputed to a parent who is willfully or voluntarily underemployed.

***Massey***, 315 S.W.3d at 795 (citing TENN. COMP. R & REGS. 1240-2-4-.04(3)(a)2(i)(II) (date)). The party alleging willful underemployment, here, the State, carries the burden of proof. ***Owensby v. Davis***, No. M2007-01262-COA-R3-JV, 2008 WL 3069777, at \*4 (Tenn. Ct. App. Jul. 31, 2008). The question of whether a parent is willfully underemployed "is a fact-driven inquiry that requires careful consideration of all relevant circumstances." ***Chorost***, 2003 WL 21392065, at \*8. The purpose of the inquiry is to ascertain the reasons for the obligor parent's choice of occupation and to assess the reasonableness of the choice. ***Id.*** In making this determination, the court may consider the parent's past and present employment, the parent's education, training, and ability to work, and whether the parent has an extravagant lifestyle that is not appropriate for the claimed income level. TENN. COMP. R & REGS. 1240-2-4-.04(3)(a)2.(i)(II), (IV) (2009). The determination of whether the parent's alleged underemployment is willful or voluntary "may be based on any intentional choice or act that affects a parent's income." TENN. COMP. R & REGS. 1240-2-4-.04(3)(a)2.(ii)(I) (2009). In light of these standards, we considered the evidence recounted in the Statement of the Evidence.

The only education reflected in Father's testimony was a high school diploma, and there was no evidence of any training. Father testified that he had been doing painting for most of his life, except for one four-year stint at a manufacturing company. The evidence indicated that he was "making more money" in the manufacturing company job, but did not include the time period in which he was employed there, the amount of money he made, the type of work that he did there, the reason why he left, or whether the termination of Father's employment was voluntary or the result of his voluntary actions.

Father testified that he did not have a driver's license, as a result of a DUI conviction and a conviction for driving on a revoked license in another county, and some unpaid tickets. The Statement of the Evidence does not indicate when the DUI conviction and the conviction for driving on a revoked license occurred, when Father lost his driver's license, or the effect of the loss of the driver's license on Father's ability to work or obtain additional painting and remodeling jobs.[14] It does not indicate how many hours per week Father was working as of the date of the October 2008 hearing. The evidence indicated that Father has a modest lifestyle, far from extravagant, and lives with his mother to reduce his personal expenses.

Willful underemployment is a question of fact, reviewed on appeal using the standard in Tenn. R. App. P. 13(d). *Chorost*, 2003 WL 21392065, at \*9. The factual finding must be supported by evidence in the record. *Id.* at \*8. In this case, from our careful consideration of the record, we must conclude that the evidence does not support the trial court's finding that Father is willfully or voluntarily underemployed. Moreover, even if there were evidence of willful underemployment, there is no evidence from which the trial court could determine Father's income potential or earning capacity. There is certainly no evidence that Father had an earning capacity that would support Father's current child support obligation, particularly considering the additional minor child for whom Father is required to pay support.

Because the State failed to rebut Father's *prima facie* case for modifying his child support, we must conclude that the trial court erred in denying Father's motion to reduce his child support obligation. We remand for a calculation of Father's child support obligation based on the actual income level shown at the October 2, 2008 hearing, and taking into account any children for whom Father is required to pay support other than the two children with Mother who are the subject of this appeal. The trial court may take into account any other relevant

---

[14]We note that the child support guidelines state that "criminal activity and/or incarceration shall result in a finding of voluntary underemployment. . . ." TENN. COMP. R & REGS. 1240-2-4-.04(3)(a)2(ii)(I (2008). Although Father's DUI and conviction for driving on a revoked license could be considered "criminal activity," the evidence does not show when they occurred or the effect on Father's income. Therefore, we find this provision of the child support guidelines to be inapplicable.

factors, such as Mother's income under the Income Shares guideline provisions, Father's visitation, or any other relevant factors, in its discretion. The modification of Father's child support should be made effective as of the date Father filed his Motion for Reduction of Child Support, *i.e.*, May 15, 2006.

This holding pretermits any other issues raised on appeal.

## CONCLUSION

The decision of the trial court is vacated in part, reversed in part, and remanded for further proceedings consistent with this Opinion. Costs of this appeal are taxed against Appellee State of Tennessee, for which execution may issue, if necessary.

_____

HOLLY M. KIRBY, JUDGE