IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 19, 2009 Session

**PATRICIA ANNE GHO MASSEY**
**v.**
**GREGORY JOEL CASALS**

**Appeal from the Juvenile Court for Shelby County**
**No. F-7887     William A. Peeler, Judge**

_____

**No. W2008-01807-COA-R3-JV - Filed November 23, 2009**
_____

This is a child support case. The mother filed a petition to increase the father's child support obligation, alleging that he had misrepresented his gross income. After an evidentiary hearing, the juvenile court judge entered an order finding that the father's testimony was not credible and that he earned significantly more income than he previously represented. The order increased the father's monthly child support obligation, retroactive to the date of the filing of the mother's petition. It also required the father to pay for the child's private school tuition, and awarded the mother her attorney's fees. The father appeals, arguing *inter alia* that the trial court erred in not using evidence such as his tax returns to determine his income, in not finding the mother voluntarily underemployed because she worked part-time, and in requiring him to pay private school tuition. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J. and J. STEVEN STAFFORD, J., joined.

Wendy S. Dabbous and Jessica May Thomas, Memphis, Tennessee, for Respondent/Appellant Gregory Joel Casals

Robert E. Cooper, Jr., Attorney General and Reporter, and Warren A. Jasper, Nashville, Tennessee, for the Tennessee Department of Human Services, on behalf of Petitioner/Appellee Patricia Anne Gho Massey

# OPINION

## FACTS AND PROCEDURAL HISTORY

This appeal is the latest installment in an ongoing dispute between Petitioner/Appellee Patricia Anne Gho Massey ("Mother") and Respondent/Appellant Gregory Joel Casals ("Father") over support for their child, born May 10, 1994.[1] As background, the parties were never married to one another, but lived together when the child was born. An order of legitimation was entered within a year after the child's birth. After they separated, Father's child support obligation was set by consent in August 1997.

Mother is a college graduate. After Mother and Father separated, Mother married. At the time of the proceedings below, she had two small children, not yet school age. After her youngest children were born, Mother reduced her employment from full-time to part-time.

Father is a college graduate as well, and has worked for many years as a financial analyst. He also married, and the record indicates that at the time of the proceedings below, his wife was a student in law school in Memphis. They also had two children; both attended private schools in Memphis.

The parties' disputes began in late 1997 and early 1998. Although the parties' disagreements included the designation of primary residential parent and the allocation of residential parenting time, this appeal involves only issues surrounding child support, so we will limit our discussion to the facts pertinent to the subject of this appeal.

In August 1997, the parties agreed to an order reducing Father's child support obligation from $1,365 per monthly to $1,300 per month. By February 1998, Father had moved from Tennessee and had obtained employment in New York. In light of this change, Father filed a petition to reduce his child support obligation. In May 1998, the trial court reduced Father's child support obligation to $982.80 per month. At some point thereafter, Father relocated to California, and, subsequently, Father was involuntarily laid off from his employment. As a result, in October 2002, he filed another petition to reduce his child support obligation. In December 2002, Father's child support obligation was temporarily reduced to $250 per month, and in June 2003, it was increased to $369 per month. Finally, in an order entered January 12, 2004, the trial court modified Father's child support obligation to $763 per month and ordered him to make the payments via income assignment. On March 30, 2004, in a separate order, the trial court affirmed its January 2004 modification. In the January 2004 proceeding, to set the level of child support, the trial court relied in part on a letter dated December 2003 from Harmonic Capital Partners, LLC, offering Father employment in Tennessee at a salary of $70,000 per year.

---

[1] Both parties have been represented by many different attorneys throughout the course of their legal disputes. None of the attorneys who represented them in the trial court represent them on appeal.

On August 24, 2005, Mother filed a petition to increase Father's child support obligation. The petition also sought to have Father held in criminal and civil contempt, alleging that Father had willfully and purposefully misrepresented his income to the trial court in the hearing that resulted in the January and March 2004 orders. In support of her allegation, Mother claimed that the December 2003 letter offering Father employment was inconsistent with a mortgage application Father signed in March 2004. In the mortgage application, Father asserted that his compensation was derived as the sole owner of Harmonic Capital Partners, LLC, at a level of $20,000 per month, or $240,000 per year, far in excess of the $70,000 per year salary recited in the December 2003 letter. On January 31, 2006, Father filed a petition to reduce his child support, asserting that his employment with Harmonic Capital Partners, LLC was terminated in December 2005. Discovery, and discovery disputes, ensued.

On December 5 and 11, 2006, Juvenile Court Referee Claudia Haltom conducted a hearing on both parties' petitions to modify Father's child support obligation. After the hearing, Referee Haltom entered detailed findings of fact and conclusions of law that reflected the Referee's perception that Father was repeatedly untruthful in his testimony concerning his income:

> The court finds that Mr. Casals has not been forthcoming or credible with proof of his income at any time during these proceedings. Mr. Casals has intentionally and purposely misrepresented his income to the court. Mr. Casals' testimony regarding his income has consistently been evasive and unresponsive. He has not submitted adequate or credible proof of income nor has he addressed his own personal internet trading or personal investments satisfactorily to the court. His personal expenses are totally inconsistent with his testimony.
> . . . As proof of his income Mr. Casals submitted a letter dated December 20, 2003 wherein he represents that he was offered employment with Harmonic Capital Partners LLC with an annual salary of $70,000. . . . At no point is there any indication that Mr Casals was in fact a majority owner with Harmonic Partners LLC. . . . In court, Mr. Casals testified that this letter was solicited in anticipation of the child support hearings.
> Mr. Casals received a reduction in his child support in 2004 based on this letter. . . . During this time period his life-style continued to reflect income significantly higher than $70,000.
> On March 2, 2004, Mr. Casals filed a Uniform Residential Loan Application . . . for the purchase of a house . . . for a total home loan of $539,800. In this application he represents to the lending institution . . . that his monthly income was $20,000.00, or $240,000 per year. He represents that he is the owner of Harmonic Capitol Partners, not a mere employee. He represents that he has total assets of $435,000 with liquid assets from his E Trade account of $400,000. He represents that he pays $659.00 per month for his Mercedes automobile. He represents that he has no child support obligation.

Either Mr. Casals committed perjury or bank fraud or both. His testimony was that the loan was based on his wife's income and the E Trade account has been handled by his wife. Neither the mortgage application nor the E Trade account include his wife's name. The home is solely owned by Gregory J. Casals, with no co-borrower.

For the year 2004, Mr. Casals['] . . . . [t]otal annual credit card payments . . . were $141,930.60 in the year he claims to have made only $70,000.00.

. . . .

Mr. Casals' justification for this inconsistency is that he alleges he had business expenses. The court saw no receipts, no documents, no reimbursements and no proof of such business expenses.

For the year 2006 Mr. Casals . . . . alleges that on December 16, 2005 he was terminated from his employment with Harmonic Partners LLC and his child support should be further reduced from $763.00 per month. The same month he claims to have lost his job, he hired a contractor to continue the renovation on his home [in] Memphis, Tennessee. He testified that he has been renovating the home for the past two years and is now renovating the kitchen. He stated under oath that the money to pay for the home renovations is coming from his wife's student loans for law school.

. . .

Mr. Casals stated that his wife has worked part-time for West Publishing Co. in 2006 while she is in law school, but he has no idea how much she makes. He stated that in 2004 and 2005 she did not work and earned no income. He has two in home children, one of which attends the same private school as this child [with Mother].

After finding that Father had been neither forthcoming nor credible regarding his income, and in light of proof submitted at the hearing of Father's high standard of living, Referee Haltom found Father's income to be the amount claimed in his March 2004 mortgage application, $20,000 per month. Father's child support obligation was increased accordingly. Father then requested a hearing by the juvenile court judge.

After Father's request for a hearing, the juvenile court judge recused himself, and a special judge, Judge William A. Peeler, was assigned to hear the case. Subsequently, Father lodged a challenge to the constitutionality of Tennessee Code Annotated section 71-3-124(c), at which time the Attorney General's Office intervened to address the constitutionality issue.

At the outset of the hearing, Judge Peeler dismissed Father's challenge to the constitutionality of the statute. He then heard testimony from Mother, Father, Mother's employer, Mother's father, and Father's wife. Additionally, some twenty-seven exhibits were submitted into evidence; these outlined various expenses expected to be incurred for the child, and the financial circumstances of Mother, Father, and Father's wife. At the conclusion of the hearing, Judge Peeler took the matter under advisement.

On July 30, 2008, Judge Peeler entered an order detailing his findings. Similar to Referee Haltom, Judge Peeler's findings emphasized Father's evasiveness and prevarication:

> Mr. Casals is a financially sophisticated individual. . . . He owns or has owned part or all of several investment companies. His tax returns reflect he traded stock and stock options in 2004 valued at $1,920,809 and in 2005, $11,837,355. In 2004, he purchased a home for $568,000 and in late 2005 and early 2006, he undertook additions and renovations to that home costing in excess of $22,000. His two in home children both attend private school. He spends many thousands of dollars on his credit cards. There is no proof that he has ever been delinquent on the house note or any of his debts. Notwithstanding all this, in March 2004, Mr. Casals petitioned the Courts and was granted a reduction in his child support, apparently based upon testimony and proof submitted that his yearly income was only $70,000.00.
>
> . . . At the present hearing, the Court has found Mr. Casals vague, uncooperative and evasive of the truth. Although he is very financially savvy, trades in millions of dollars of stock, and advises others on their finances, he knows little of his own finances. He did not know how much money his wife makes, which bills she pays and which he pays, and from which or whose account various family expenses are paid. The tax returns provided the Court by Mr. Casals are unsigned, incomplete, ambiguous, and contradictory of his testimony. There was no reliable evidence presented of exactly what Ms. Casals' income is and no reliable evidence that explains how he sustains his lifestyle on his stated income.
>
> In Trial Exhibit 20, Uniform Residential Loan Application, which Mr. Casals signed March 29, 2004, almost contemporaneously with the 2004 Court proceeding where his child support was reduced, Mr. Casals made application . . . to purchase a house costing $568,300. In that application, he stated that his monthly income was $20,000 per month and that he was 100% owner of Harmonic Capital Partners, both of which are contrary to what he represented to the Court. Mr. Casals tries to explain that his stated $20,000 per month income includes Mrs. Casals' income, but the loan application nowhere indicates that as is clearly required, nor do the Casals' tax returns or any other reliable evidence corroborate same. After careful consideration of the record, testimony, and all trial exhibits, the Court has concluded that the most reliable proof of Mr. Casals['] income is the amount which he acknowledged as true and correct on his Residential Loan Application, that being $20,000 per month and further that he misrepresented his income in obtaining the 2004 reduction in child support. . . .

Thus, Judge Peeler characterized the financial documents provided by Father as untrustworthy, found that the most reliable proof of Father's income was the March 2004 mortgage application, and so held Father's income to be the $20,000 per month income figure on the application. Accordingly, Father's child support obligation was increased, retroactive to the date of filing Mother's petition, with credit for amounts paid during this time. Judge Peeler noted that Father's other two children

attended private school, and found that it was appropriate to deviate from the Guidelines to provide this benefit to the child at issue; thus Father was ordered to pay the child's private school tuition as well. Father's petition to reduce his child support obligation was dismissed. Finally, Mother was awarded her attorney's fees. From this order, Father now appeals.

### ISSUES ON APPEAL AND STANDARD OF REVIEW

Slightly restated, Father raises the following issues on appeal:

1. Whether the trial court erred in failing to properly determine Father's income under the Tennessee Child Support Guidelines.
2. Whether the trial court erred in failing to find Mother voluntarily underemployed and failing to impute income to Mother.
3. Whether the trial court erred in including private school tuition as a deviation.
4. Whether the trial court erred in implicitly finding Father's child support to be in arrears, prior to applying the retroactive modification, by failing to give Father credit for child support paid directly to Mother.
5. Whether the trial court erred in its calculation of retroactive child support by applying the determined income figure to the entire time period at issue, by failing to use actual parenting time, by failing to use the correct number of months, by failing to use the correct amounts for insurance, by including tuition for past years, and by including expenses for the child's extracurricular activities.
6. Whether the trial court erred in failing to conduct a *de novo* hearing as defined by Tennessee law.
7. Whether the trial court erred in awarding attorney's fees to Mother.

In a child support modification case, the trial court's findings of fact are reviewed *de novo* with a presumption of correctness. *See Lacey v. Lacey*, No. W2002-02813-COA-R3-CV, 2003 WL 23206069, at *2 (Tenn. Ct. App. Oct. 31, 2003), *no perm. app.* (citing *Huntley v. Huntley*, 61 S.W.3d 329, 334 (Tenn. Ct. App. 2001)). On appeal, considerable deference is given to the trial court's determinations of the credibility and weight to be given to witness testimony because "the trial court [had] the opportunity to observe the witnesses' demeanor and hear the in-court testimony." *Interstate Mech. Contractors, Inc. v. McIntosh*, 229 S.W.3d 674, 678 (Tenn. 2007) (citing *Tobitt v. Bridgestone/Firestone, Inc.*, 59 S.W.3d 57, 61 (Tenn. 2001); *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. Workers Comp. Panel 1995)). "The trial court's conclusions of law are reviewed *de novo,* with no presumption of correctness." *Lacey*, 2003 WL 23206069, at *2 (citing *Huntley*, 61 S.W.3d at 334).

ANALYSIS

### *Father's Income*

Father first argues that the trial court erred in determining his gross income under the Tennessee Child Support Guidelines ("Guidelines") by using the substantially larger income figure in his 2004 mortgage application instead of the income figures in his W-2s, federal income tax returns,[2] and 2008 pay stub. In support of this assertion, Father relies on the Guidelines provisions on imputing income. These provisions refer to "reliable evidence of income" to be used in imputing income, stating parenthetically that such reliable evidence of income can include "tax returns for prior years, check stubs, or other information for determining current ability to support." TENN. COMP. R. & REGS. 1240-2-4-.04(3)(a)2(iv)(II)I (2009). Father argues that, because mortgage applications are not included in the list of "reliable evidence of income" in this Guideline provision, and tax returns and check stubs are included in the list, the trial court erred by not using his tax returns and current pay stub to determine his income. In support of the assertion, he cites **Brewer v. Brewer**, No. M2005-02844-COA-R3-CV, 2007 WL 3005346, at *10 (Tenn. Ct. App. Oct. 15, 2007), *no perm. app.* (citing TENN. COMP. R. & REGS. 1240-2-4-.04(3)(a)(2)(iv)(I)(I.) (2007)).

The Guidelines provisions relied upon by Father state:

(3)     Gross Income
        (a) Determination of Gross Income.
. . . .
          2.     Imputed Income.
                 (i) Imputing additional gross income to a parent is appropriate in the following situations:
                 (I) If a parent has been determined by a tribunal to be willfully and/or voluntarily underemployed or unemployed; or
                 (II)  When there is no reliable evidence of income; or
                 (III)  When the parent owns substantial non-income producing assets, the court may impute income based upon a reasonable rate of return upon the assets.
                 . . . .
                 (iv)  Imputing Income When There is No Reliable Evidence of Income
                 . . . .
                 (II)  When modifying an Existing Order

_____

[2] Eight days prior to oral argument on appeal, Father filed an amended motion to consider post-judgment facts, seeking to have the Court consider an amended tax return. We took the motion under advisement. "Consideration of [post-judgment] facts lies in the discretion of the appellate court." TENN. R. APP. P. 14(a). Because the motion was unopposed, we grant Father's motion.

> 1. If a parent fails to produce reliable evidence of income (*such as tax returns for prior years, check stubs, or other information* for determining current ability to support)

TENN. COMP. R. & REGS. 1240-2-4-.04(3)(a)2(i) and (iv) (2009) (emphasis added).

The fairness of a child support award depends on an accurate determination of both parents' gross income or ability to support. Thus, the Guidelines set forth the method to be used by courts in determining the gross income of each parent. TENN. COMP. R. & REGS. 1240-2-4-.04(3)(a) (2009). In most situations, the parent's gross income is equivalent to his earning capacity or ability to support.

In certain limited situations, however, the Guidelines provide that a court may "impute" income to a parent, that is, assign or attribute an income level to the parent that may not reflect the parent's actual gross income. This is based on the premise that parents may not avoid their financial responsibility to their children by unreasonably failing to exercise their earning capacity. Thus, the Guidelines state that income may be imputed to a parent who is willfully or voluntarily underemployed. *Id.* at 1240-2-4-.04(3)(a)2(i)(I). Income may also be imputed to a parent where the court has been provided no reliable evidence of the parent's income. *Id.* at 1240-2-4-.04(3)(a)2(i)(II).

For example, in ***Brewer v. Brewer***, cited by Father, the appellate court reversed the trial court's finding that the retired obligor parent was willfully or voluntarily unemployed. ***Brewer***, 2007 WL 3005346, at *10. The appellate court also found that the obligor parent's retirement account statement was reliable evidence of his actual income. *Id.* Therefore, it was not appropriate to impute income to the obligor parent, and the support obligation was set in accordance with the retirement account statement. *Id.*

In this case, there was no allegation that Father was willfully or voluntarily underemployed. Instead, the trial court was presented with the issue of whether Father *actually* made more income than he claimed in the January 2004 hearing. The trial court specifically found that the evidence of income submitted by Father was not reliable, describing Father's tax returns as "unsigned, incomplete, ambiguous, and contradictory of his testimony." From our review, the record supports this finding. The trial court did not, however, "impute" income to Father, because it found that the 2004 mortgage application constituted reliable evidence of his income. It found that Father's *actual* income was the income claimed in the 2004 mortgage application, $20,000 per month or $240,000 per year. From our review of the record, including the evidence of Father's expenses and lifestyle, this finding is likewise supported by the record.

Father seems to assert that the trial court was obliged to find that his income was the amount indicated on the tax returns and check stubs he proffered to the court, simply because the Guidelines cite the tax returns and check stubs as examples of usually reliable evidence of income. This

argument is without merit. In light of the trial court's finding that the tax returns and check stubs are unreliable, we would be ill-advised to require the trial court to utilize them to determine Father's income. Therefore, we affirm the trial court's determination of Father's income for purposes of setting his child support obligation.[3]

### *Voluntary Underemployment of Mother*

Father next asserts that the trial court erred in failing to find Mother is voluntarily underemployed and in declining to impute income to her. As noted above, the Guidelines provide that a court may impute income "[i]f a parent has been determined by a tribunal to be willfully and/or voluntarily underemployed." TENN. COMP. R. & REGS. 1240-2-4-.04(3)(a)2(i)(I) (2009). The burden was on Father to prove that Mother is willfully underemployed. The Guidelines do not presume that a parent is willfully underemployed; rather "[t]he purpose of the determination is to ascertain the reasons for the parent's occupational choices, and to assess the reasonableness of these choices in light of the parent's obligation to support his or her child(ren) and to determine whether such choices benefit the children." TENN. COMP. R. & REGS. 1240-2-4-.04(3)(a)2(ii) (2009).

In the hearing before the trial court, Mother testified that she went from being a full-time worker to a part-time worker after the birth of her second child. Testimony from both Mother and her employer indicated that the birth coincided with a personnel restructuring by her employer. After that, Mother gave birth to her third child. Both Mother and her employer testified that, after the third child was born, there was no longer a full-time position available for Mother. Mother also testified that working part-time better enabled her to care for her young children. The trial court made no express finding on Father's assertion that Mother was underemployed, but dismissed his petition, thus implicitly determining that Mother's decision to work part-time was reasonable and did not constitute willful or voluntary underemployment under the circumstances.

Father acknowledges that Mother's choice to work part-time may benefit her two youngest children, not school-age at the time of the hearing, but argues that her working part-time does not benefit the child at issue, who was fourteen years old at the time of the hearing. Thus, Father argues, as to the fourteen-year-old, Mother must be deemed voluntarily underemployed and the trial court erred in declining to impute full-time earnings to her.

The Guidelines do not support the myopic view advocated by Father. We are not willing to assume that Mother's decision to work part-time instead of full-time does not also benefit the parties' fourteen-year-old, but even if this were true, it would not necessarily mean that Mother's occupational choice was unreasonable. Indeed, the Guidelines clearly reflect State policy supporting a parent's reasonable decision to stay at home full-time to care for children:

---

[3] Father argues that there was no "significant variance" under the Guidelines to justify modifying an existing child support order. *See* TENN. COMP. R. & REGS. 1240-2-4-.05(2) (2009). This is inapplicable where, as here, the trial court finds that the prior child support was established based on misrepresentation by the obligor parent regarding his income.

> The following factors may be considered by a tribunal when making a determination of willful and voluntary underemployment or unemployment:
>
> . . . .
>
> (III) The State of Tennessee recognizes the role of a stay-at-home parent as an important and valuable factor in a child's life.

TENN. COMP. R. & REGS. 1240-2-4-.04(3)(a)2(iii)(III) (2009). Notably, this recognition in the Guidelines of the role of the stay-at-home parent is not limited to children who are not yet school age. Under these overall circumstances, where Mother was charged with caring for two very young children in addition to the parties' child, and where Mother's long-time employer no longer had a full-time position available to her, we find no error in the trial court's implicit conclusion that Father did not carry his burden of proving that Mother was voluntarily underemployed.

### *Private School Tuition*

Father next asserts that the trial court erred by ordering an upward deviation from the Guidelines to require Father to pay private school tuition. Father states that he did not receive notice that tuition would be an issue at the hearing, as Mother did not plead for it in her petition to modify.

Under the Guidelines, a court may grant an upward deviation to award tuition as an extraordinary educational expense, in addition to the obligor parent's basic child support obligation. TENN. COMP. R. & REGS. 1240-2-4-.07(2)(d)1(i) (2009); *see Kaplan v. Bugalla*, 188 S.W.3d 632, 635-36 (Tenn. 2006). The award of "such deviation is within the discretion of the tribunal." TENN. COMP. R. & REGS. 1240-2-4-.07(1)(b) (2009).

We note that Mother testified that, in advance of the hearing, she emailed Father to request that he pay half of the child's tuition; his response was that if Mother had "any questions or problems with tuition . . . to get the matter settled before the Court." The trial court could reasonably find from this that Father in fact had notice that the issue would be considered in the hearing. Moreover, the trial court heard extensive testimony on the issue of private school tuition. In his brief on appeal, Father points to no place in the record in which he objected to the trial court's consideration of the issue based on lack of notice. We will not consider on appeal an issue that was not raised to the trial court. *See Barnes v. Barnes*, 193 S.W.3d 495, 501 (Tenn. 2006) (citing *Simpson v. Frontier Cmty. Credit Union*, 810 S.W.2d 147, 153 (Tenn. 1991)).

The evidence at the hearing showed that the child at issue had attended private school since kindergarten, and had recently changed to a new private school that was more expensive. Heretofore, Father had not been required to pay for the child's private school tuition. Considering the record as a whole, we find no abuse of discretion in the trial court's decision to grant an upward deviation from the Guidelines to require Father to pay for private school tuition in addition to his basic monthly child support obligation.

### Support Paid Directly to Mother

Father asserts that the trial court erred by failing to give him credit for child support payments made directly to Mother during 2005 and 2006.

In the July 2008 order, the trial court retroactively modified Father's monthly child support obligation from September 1, 2005 to July 30, 2008, from $763 to $1987. It ordered that Father be given credit for child support payments made during this time. As an exhibit, the trial court attached a CSES-NCP Payment Summary that showed Father only made payments for 2007 and 2008, with no child support payments in 2005 and 2006. The sum of this calculation resulted in a $57,426 arrearage.

We note that the January 2004 child support order clearly required Father to make his child support payments through the Central Child Support Receipting Unit via income assignment, not directly to Mother. Generally, "an obligor parent is not given credit for child support payments made in a manner other than that specified in the operative child support order." *Smith v. Smith*, 255 S.W.3d 77, 83 (Tenn. Ct. App. 2007). *See also* Tenn. Code Ann. § 36-5-101(c)(2)(A)(ii) (2005) (providing that, in certain instances, courts are prohibited from giving credit to payments made through means other than the central collection and disbursement unit). The record shows Father failed to make any payments in 2005 and 2006 through the Central Child Support Receipting Unit as ordered by the trial court. Under the circumstances, we must conclude that the trial court did not err in not giving Father credit for any such payments.

### Various Alleged Errors in Calculation

Father asserts on appeal that the trial court made several errors in calculating his alleged arrearage in child support. Specifically, Father contends that the trial court erred by (1) applying the $20,000 monthly income figure to the entire time period at issue, back to the filing of Mother's August 2005 petition to modify; (2) by failing to credit Father for child support purposes with his actual parenting time of 157 days per year; (3) by adding an extra month in its child support calculation; (4) by failing to use the correct amounts for health insurance premiums; (5) by including payments for private school tuition for past years, back to the date of Mother's August 2005 petition; and (6) by including expenses for the child's extracurricular activities.

We note that determinations of child support lie within the discretion of the trial court. *See State ex rel. Moore v. Moore*, No. W2007-01519-COA-R3-JV, 2008 WL 2687672, at *3 (Tenn. Ct. App. July 3, 2008), *no perm. app.* (citing *State, ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000)). In considering these alleged errors, this Court on appeal has reviewed the transcript of the testimony, the exhibits, the trial court's order and its worksheet, and the appellate record as a whole. Having reviewed the record and considered the errors alleged by Father, we cannot conclude that the evidence preponderates against the trial court's calculation of Father's child support obligation or the arrearage in child support.

### *De Novo Hearing*

Father next asserts that the trial court erred in failing to conduct a *de novo* hearing as defined by Tennessee law. More particularly, Father points to the child support worksheet attached to Judge Peeler's July 2008 order and asserts that it is a photocopy of the child support worksheet attached to the order of Juvenile Court Referee Haltom. On this basis, Father argues that he was denied a *de novo* hearing pursuant to Tennessee Code Annotated § 37-1-107(e).[4] In support of this assertion, Father cites **Kissick v. Kallaher**, No. W2004-02983-COA-R3-CV, 2006 WL 1350999 (Tenn. Ct. App. May 18, 2006), *no perm. app.*, and **Kelley v. Evans**, 43 S.W.3d 514 (Tenn. Ct. App. 2000), both of which hold that a *de novo* review of the record is not equivalent to a *de novo* hearing. **Kissick**, 2006 WL 1350999, at *2-3; **Kelley**, 43 S.W.3d at 515-16.

Special Juvenile Court Judge Peeler's hearing on this matter was held for most of the day on May 19, 2008.[5] Five witnesses were called to testify and twenty-seven exhibits were entered into evidence. The record includes a 286-page transcript of the hearing. Even assuming that Judge Peeler ended up choosing to use the same worksheet used by Referee Haltom, he did so after hearing all of the evidence proffered by both Father and Mother. Clearly, Father had a fresh opportunity to persuade Judge Peeler that his testimony and documentary evidence were truthful and straightforward; he simply failed to do so. After reviewing the record as a whole, we find that Father was given a *de novo* hearing, consistent with section 37-1-107(e).

### *Attorney's Fees*

Finally, Father asserts that the trial court erred in awarding attorney's fees to Mother. Father argues that this award was in error because the trial court lacked statutory authority to make the award; because the award was based solely on the affidavit of Mother's previous counsel; and because attorney's fees cannot be awarded as child support.

---

[4]The statute provides:

> Any party may, within five (5) days thereafter, excluding nonjudicial days, file a request with the court for a hearing by the judge of the juvenile court. The judge may, on the judge's own motion, order a rehearing of any matter heard before a referee, and shall allow a hearing if a request for such hearing is filed as herein prescribed. Unless the judge orders otherwise, the recommendation of the referee shall be the decree of the court pending a rehearing.

T.C.A. § 37-1-107(e) (2008 Supp.).

[5]The transcript of the hearing indicates the hearing occurred on May 19, 2008; however, the record contains an order of continuance, dated May 19, 2008, indicating that the matter was continued to June 23, 2008.

Under Tennessee Code Annotated § 36-5-103(c),[6] a parent may recover "reasonable attorney fees incurred in enforcing any decree for . . . child support." T.C.A. § 36-1-103(c) (2005). Father asserts that the trial court erred by awarding attorney's fees, because this matter is not an *enforcement* of a child support decree. This Court has held otherwise. "In child support modification cases, Tenn.Code Ann. § 36-5-103(c), gives trial courts the power to award 'reasonable attorney fees....' " ***Huntley v. Huntley***, 61 S.W.3d 329, 341 (Tenn. Ct. App. 2001).

Father also asserts that the trial court erred in awarding attorney's fees based solely upon the affidavit of Mother's counsel, noting that the same attorney represented Mother in the actions pending between the parties in other courts. The sworn affidavit of Mother's counsel, submitted to the trial court, states that the fees contained in it were incurred with respect to the subject child support proceedings in the juvenile court. Father points to no place in the record in which he objected to the trial court's consideration of the affidavit. We find no error in the trial court's reliance on this affidavit.

Finally, Father points to the language of the trial court's order and asserts that it was error under Tennessee Attorney General Opinion 08-47[7] to award attorney's fees "as a child support judgment." Our review of the record indicates that the trial court's award of attorney's fee was separate from the award of child support. This issue is without merit.

An "award of attorneys' fees is within the trial court's discretion." ***Id.*** (citing ***Richardson v. Richardson***, 969 S.W.2d 931, 936 (Tenn. Ct. App. 1997)). After reviewing the record as a whole, we find no error in the trial court's award of attorney's fees to Mother in this cause.

---

[6]The statute provides:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

T.C.A. § 36-5-103(c) (2005).

[7] "A judge may assess attorney fees in divorce and paternity matters. However, attorney fees may not be 'attached' to a parent's child support obligation because such fees are not child support." Tenn. Op. Atty. Gen. No. 08-47 (March 10, 2008).

## CONCLUSION

The decision of the trial court is affirmed. The costs of this appeal are taxed to the Appellant Gregory Joel Casals and his surety, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE