# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
March 20, 2014 Session

## IN RE: JOHN H. B.

**Direct Appeal from the Juvenile Court for Macon County**
**No. 2012-JV-10     Ken Witcher, Judge**

**No. M2013-00496-COA-R3-JV - Filed April 17, 2014**

Father appeals the trial court's determination that he is willfully and voluntarily underemployed and the parenting schedule established by the trial court. Mother appeals the trial court's determination that it lacked the authority to award attorney's fees under Tennessee Code Annotated § 36-5-103(c). We affirm the trial court's judgment with respect to the parenting schedule and the finding of voluntary underemployment, and vacate with respect to the issue of attorney's fees. We remand for further proceedings consistent with this Opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed in part, Vacated in part and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

J. Braden Bellar, Carthage, Tennessee, for the appellant, Father.

Lisa C. Cothron, Lafayette, Tennessee, for the appellee, Mother.

**MEMORANDUM OPINION[1]**

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

This appeal arises from an action to establish child support and a parenting schedule filed by Mother in the Juvenile Court for Macon County in January 2012. John H. B. ("John") was born out of wedlock in April 2011and Father acknowledged parentage. In her petition, Mother asserted that Father was able and capable of providing support for John but had provided no support other than daycare expenses and "some" clothing and diapers. She further asserted that, although Father had appropriately cared for John, she was concerned for John's welfare as he became older where Father was emotionally and physically abusive to his older children, had failed to comply with court orders in previous custody proceedings (to which Mother was not a party), and where a married women with whom he had become involved has sought an order of protection against Father. In her proposed parenting plan, Mother prayed that Father be granted parenting time from 4:30 p.m. on Friday to 4:30 p.m. on Sunday every other week; from 4:30 p.m. on Wednesday until 7:30 a.m. on Thursday every week; Thanksgiving from 2:00 p.m. Thanksgiving Day until 6:00 p.m. on Friday; noon on Christmas Day until 6:00 p.m. on December 26; on John's birthday from 3:00 to 5:00 p.m.; and Father's Birthday from 3:00 to 5:00 p.m.; and part of the winter school holidays. She prayed for retroactive and prospective child support to be determined, and for attorney's fees.

Father answered in March 2012, admitting parentage and denying Mother's allegations of any wrongdoing. Father asserted that he had paid for most of John's necessities in the amount of $500 per month. He counter-petitioned to be named primary residential parent and prayed for child support.

Following five hearings in August, September, October, November and December 2012, by order entered January 31, 2013, the trial court ordered that Mother would retain sole custody of John and granted her full decision-making authority.[2] The trial court awarded Father 116 parenting days per year. The trial court determined Father was voluntarily underemployed, imputed Father's gross monthly income to be $13,072, and set Father's child support obligation at $1455 per month. The trial court awarded Mother retroactive child support in the amount of $20,878.26, to be paid at the rate of $500 per month until paid in full. In March 2013, Mother filed a motion to alter, amend or vacate the judgment, praying the court to amend some of the wording of its order and for an award of attorney's fees. The trial court denied the motion by order entered April 19, 2013. Father filed a timely notice of appeal to this Court.

---

[2]In February 2012, the trial court ordered Father to pay child support in the amount of $294 per month, daycare expenses in the amount of $80 per month, and Mother's medical expenses in the amount of $2515.97. In January 2013, the trial court found Father to be in criminal contempt for failure to abide by the court's order.

### *Issues Presented*

Father presents two issues for our review, as presented by Father:

(1)     Whether the trial court erred in finding [Father] willfully underemployed[.]

(2)     Whether the trial court maximized [Father's] parenting time pursuant to T.C.A. § 36-6-106[.]

Mother presents the additional issue of whether the trial court erred by determining that it did not have the authority to award her attorney's fees where the parents were never married. She additionally prays for attorney's fees on appeal.

### *Standard of Review*

We review findings of fact of a trial court sitting without a jury *de novo* upon the record with a presumption of correctness unless the preponderance of the evidence is otherwise. *In Re Angela E.*, 303 S.W.3d 240, 246 (Tenn. 2010) (citation omitted); Tenn. R. App. P. 13(d). Insofar as a factual finding is based on the trial court's assessment of witness credibility, we will not reverse that finding absent clear and convincing evidence to the contrary. *In Re: M.L.D.*, 182 S.W.3d 890, 894 (Tenn. Ct. App.2005). No presumption of correctness attaches, however, to a trial court's conclusions on issues of law. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000); Tenn. R. App. P. 13(d).

### *Discussion*

We turn first to whether the trial court erred by finding Father to be willfully underemployed. In his brief, Father, asserts that he semi-retired in 2009 and that the trial court erred by setting his child support obligation based on income earned in years before his semi-retirement. He asserts the trial court "reached back to a time before John's birth" and "set support based on inflated income on a business that no longer exists and income that cannot be characterized as anything but a 'one time shot.'" Father further contends that he was the caretaker for John while Mother worked, and that it was therefore "illogical" for the trial court to find him willfully underemployed. Mother, on the other hand, asserts Father, who is 48 years of age, owns valuable construction equipment and real estate and that he has filed "creative" tax returns.

Awards of child support are governed by the Tennessee Department of Human Services' Child Support Guidelines, which provide that the trial court may impute additional

income to a parent in its calculation of child support if it determines that the parent is willfully and/or voluntarily underemployed or unemployed. Tenn. Comp. R. & Regs. 1240–02–04–.04(3)(a)(2)(ii)(I). The finding is based on the theory that parents should not be able to "avoid their financial responsibility to their children by unreasonably failing to exercise their earning capacity." *Massey v. Casals*, 315 S.W.3d 788, 795 (Tenn. Ct. App. 2009). "A determination of willful and/or voluntary underemployment or unemployment is not limited to choices motivated by an intent to avoid or reduce the payment of child support. The determination may be based on any intentional choice or act that adversely affects a parent's income." Tenn. Comp. R. & Regs. 1240–02–04–.04(3)(a)(2)(ii)(I). In making its determination, the trial court must consider the parent's past and present employment and determine whether the party's choice to accept a lower paying job was reasonable and made in good faith. *Willis v. Willis*, 62 S.W.3d 735, 738 (Tenn. Ct. App.2001). Additionally, the court should take into consideration the parent's education, training, and ability to work. Tenn. Comp. R. & Regs. 1240–02–04–.04(3)(a)(2)(iii)(II). Whether a parent is willfully and voluntarily underemployed is a question of fact, and we afford the trial court considerable discretion in making its determination. *Willis*, 62 S.W.3d at 738. We accordingly review the trial court's determination with a presumption of correctness. Tenn. R. App. P. 13(d) (2012).

We begin our discussion of this issue by observing that the trial court made detailed, comprehensive findings of fact in this case. The trial court found that Father, who was 48 years of age at the time of trial, is in good health but "claims to be semi-retired, working only ten hours per month." The trial court also found that Father "filed very creative income tax returns for the past four years," showing negative adjusted gross income despite maintaining a high standard of living, and that "Father managed to avoid the payment of Social Security and Medicare taxes" for those years. The trial court found that Father owns ten separate parcels of real estate valued at approximately $600,000; that Father testified that he closed his construction company because he had accumulated sufficient assets to semi-retire; and that Father's choice to semi-retire was not reasonable in light of the fact that he has a child to support. The trial court also found that Father owns and uses the equipment from his construction company to work approximately ten hours per month; that Father's income in 2008 was $156,866; and that Father remains capable of earning that amount of income. The trial court set Father's child support obligation based on that amount, allowing for self-employment deductions and credits for another child living in Father's household.

The evidence does not preponderate against the trial court's finding that Father is healthy and capable of working and earning approximately the same income that he earned in 2008.[3] Father's argument, as we understand it, is that his underemployment is not willful where he chose to semi-retire in 2009 and that he is not able to earn amounts earned in 2008.

_____

[3]It is not disputed that Mother works as a pediatric nurse.

We cannot say the trial court erred by finding that Father's decision to remain semi-retired despite having a young child to support is unreasonable. As Father concedes, the trial court's order requires Father to work as he did before his decision to "semi-retire." Additionally, the evidence does not preponderate against the trial court's decision that Father is capable of earning income of approximately the same amount earned in 2008. We affirm on this issue.

We next turn to the parenting schedule established by the trial court. We review the trial court's determination of child custody under an abuse of discretion standard, affording the trial court great deference. *E.g., Herrera v. Herrera*, 944 S.W.2d 379, 385 (Tenn. Ct. App.1996). This deferential review is premised on the assumption that the trial court first considered the best interests of the child in making the custody determination and did not act arbitrarily. *Id.* at 386. Although we will not disturb the trial court's determinations absent an abuse of discretion, the trial court's discretion is not without limit and its determinations must be based on the evidence and appropriate legal principles. *Hogue v. Hogue*, 147 S.W.3d 245, 251 (Tenn. Ct. App. 2004).

Father does not appeal the trial court's award of sole custody and decision-making authority to Mother. Rather, Father asserts in this brief that the trial court erred by awarding him 116 days of parenting time in contravention of the mandate set forth in Tennessee Code Annotated § 36-6-106(a) that both parents be permitted to enjoy the maximum participation possible in the child's life. As noted above, the trial court made comprehensive findings of fact in this matter. The trial court clearly considered the factors set forth in section 36-6-106 in fashioning its custody award and parenting schedule, and found that both Mother and Father love John, have a disposition to provide John with the necessities of life, and have suitable homes. The trial court found that the other factors weighed heavily in favor of Mother, however, and found that Father had a history of anger management and of emotional abuse toward family members and his older children, and stated that Father exhibited his anger in the trial court. The trial court specifically determined that Father had engaged in conduct toward Mother and others, including John's physician, that had been "detrimental to the [c]hild's welfare." The trial court also found that Father's current paramour was not a suitable person to have unsupervised contact with John, and ordered Father not to permit such contact. It found Father's testimony with respect to Mother's alleged conduct to not be credible, and Mother's testimony regarding Father's conduct toward Mother's older sons to be credible. The trial court granted Mother sole custody of John, and awarded her sole decision-making authority. In light of its findings with respect to Father's behavior, the trial court imposed several specific orders on Father, including ordering Father not to arrive at John's daycare prior to his regularly scheduled visitation time; not to attend any doctor visits unless specifically invited by Mother; not to permit his paramour to have unsupervised contact with John; not to make negative statements in John's presence; and to send no more than two text messages a day to Mother unless responding to a text from Mother. It further denied

Father the right to telephone conversations with John, specifically finding they were not in John's best interest.

Father cites us to no evidence in the record that would preponderate against the trial court's findings, nor does he assert that the trial court erred in its specific findings of fact. He merely argues that 116 days of visitation per year is "simply not enough parenting time." In light of the totality of findings of the trial court, and specifically the trial court's findings with respect to the factors set-forth by section 36-6-106, we cannot say the trial court abused its discretion by granting Mother sole custody and awarding Father 116 days of alternate parenting time/visitation. We affirm on this issue.

We finally turn to whether the trial court erred by not awarding Mother attorney's fees in this matter. In her brief to this Court, Mother asserts that she is entitled to attorney's fees pursuant to Tennessee Code Annotated § 36-5-103( c), which provides:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

Father did not file a reply brief to counter Mother's assertion.

In *Brewster v. Galloway*, we noted albeit, in dicta, that we have upheld awards of attorney's fees pursuant to section 36-5-103( c) in child custody disputes between non-marital parents. *Brewster v. Galloway*, No. E2011-01455-COA-R3-CV, 2012 WL 2849428, at *12 (Tenn. Ct. App. July 11, 2012) (citing *see Miller v. Welch*, 340 S.W.3d 708, 714-15 (Tenn. Ct .App. 2010) (upholding an award of attorney fees to mother of child born out of wedlock when father appealed the court's setting of child support and attorney fee award); *Massey v. Casals*, 315 S.W.3d 788, 799 (Tenn. Ct. App.2009) (upholding an award of attorney fees to mother of child born out of wedlock in child support modification case)). We stated in *Brewster* "that a legal basis exist[s]" to support an award of attorney's fees in a custody dispute between non-marital parents and that the trial court did not abuse its discretion by awarding attorney's fees to the mother in that case. *Id.*

In the current case, the trial court determined that it did not have the discretion to

award attorney's fees in a custody dispute between non-marital parents where Father admitted paternity, and declined to consider Mother's request for attorney's fees on that basis. Consistent with *Brewster*, the trial court may, in the exercise of its sound discretion, award attorney's fees in a custody dispute between non-marital parents. We accordingly remand this matter to the trial court to exercise its discretion with respect to Mother's prayer for attorney's fees.

We finally consider Mother's request for attorney's fees on appeal. An award of attorney's fees for fees incurred on appeal is within the discretion of this Court. *Archer v. Archer*, 907 S.W.2d 412, 419 (Tenn. Ct. App.1995). Given the issues and results of this litigation, we grant Mother's request for attorney's fees on appeal.

### *Holding*

In light of the foregoing, we vacate the trial court's order with respect to an award of attorney's fees. The judgment of the trial court is otherwise affirmed. Costs on appeal are taxed to the appellant Father, and his surety, for which execution may issue if necessary. This matter is remanded to the trial court to exercise its discretion with respect to Mother's prayer for attorney's fees, enforcement of the judgment, the collection of costs, and determination of the amount of attorney's fees to be awarded on appeal.


_____
DAVID R. FARMER, JUDGE