FILED

01/31/2018

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 9, 2018 Session

IN RE **MICHAEL J.**

**Appeal from the Juvenile Court for Rutherford County**
**No. 10726C   Donna Scott Davenport, Judge**

_____

**No. M2016-01985-COA-R3-JV**

_____

Putative father appeals the juvenile court's adjudication of parentage, arguing that the court erred in considering a paternity test report previously entered as an exhibit in proceedings before a magistrate. Although the court erred in taking judicial notice of the report, we conclude the error was harmless. We also conclude that the preponderance of the evidence supports the court's paternity determination. Thus, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and RICHARD H. DINKINS, J., joined.

Casey A. Long, Franklin, Tennessee (on appeal), for the appellant, Michael J.

Terry R. Clayton, Nashville, Tennessee, for the appellee, Alicia B.

**OPINION**

**I.**

Alicia B. ("Mother") and Michael J. had a romantic relationship in 2012. After Mother became pregnant, she informed Michael J. that he was the father. He demanded proof. And immediately after the child's birth, he took both Mother and child to a genetic testing center for a paternity test. But the test results were compromised.

Undaunted, Michael J. purchased a DNA testing kit from Walgreens, personally collected new DNA samples, and mailed them to the indicated lab. After he received the Walgreens test report, he told Mother that the test showed a 99.9% probability that he

was the child's biological father. Even so, he refused to voluntarily acknowledge paternity because he viewed the Walgreens test as "unofficial."

On January 3, 2014, the State of Tennessee, on behalf of Mother, filed a petition to establish parentage in the Juvenile Court for Rutherford County, Tennessee. At Michael J.'s request, the juvenile court magistrate ordered the parties and the child to submit to another paternity test. The court-ordered paternity test, conducted by Laboratory Corporation of America ("LabCorp"), also revealed a 99.9% statistical probability of paternity.

After a hearing on August 14, 2014, the magistrate issued a preliminary order declaring Michael J. to be the child's biological father and ordering him to pay $397 in monthly child support. On February 6, 2015, the magistrate issued a final order, which increased the amount of child support awarded and granted Mother a judgment for birth-related expenses.

Michael J. requested a rehearing before the juvenile court.[1] The juvenile court hearing spanned three separate days. The first day focused on the issue determinative of this appeal: Mother's proof of parentage.

Mother testified that she had sexual relations with Michael J. in June 2012, which resulted in her pregnancy. Her son, Michael, was born in February 2013. Mother maintained that Michael J. was the father. At his request, she acquiesced to three rounds of paternity testing.

She acknowledged that there was a problem with the first test because the DNA swabs were mislabeled. But she testified that Michael J. admitted that the Walgreens test showed a 99.9% probability that he was the father of her child. And the third paternity test, which was ordered by the magistrate, also revealed a 99.9% probability of paternity.

Mother moved to admit the third test report into evidence. Michael J. initially objected because the proposed exhibit was a copy, not the original. After discovering that the LabCorp report had been admitted as an exhibit in the hearing before the magistrate, the juvenile court announced its intention to take judicial notice of the document because it was in the court record. Michael J. then objected that the juvenile court hearing was de novo. The court admitted the report over the objection.

For his part, Michael J. agreed that the parties had participated in three paternity tests. He even corroborated Mother's testimony about the first two tests. But he refused

---

[1] On October 21, 2015, the State was released from the case, and Mother has pursued the parentage petition on appeal.

2

to produce his copy of the Walgreens test report because the test was "unofficial."

He claimed that the LabCorp test results were unreliable based on his observations when providing his DNA sample. But he conceded that he was not an expert and that he had agreed to the selection of LabCorp as the testing laboratory.

On April 14, 2016, the juvenile court issued a parentage order finding that Michael J. was the child's biological and legal father. After hearing additional evidence, the court set child support and entered a judgment against Michael J. for Mother's birth-related expenses. This appeal followed.

**II.**

In a nonjury case, our review of the trial court's factual findings is de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). Our review of questions of law is de novo, with no presumption of correctness. *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013).

We review evidentiary decisions for an abuse of discretion. *White v. Beeks*, 469 S.W.3d 517, 527 (Tenn. 2015), *as revised on denial of reh'g*, (Aug. 26, 2015). "A trial court abuses its discretion by applying an incorrect legal standard or reaching an illogical or unreasonable decision that causes an injustice to the complaining party." *Id.*

A.

The General Assembly has created "a single cause of action to establish parentage of children." Tenn. Code Ann. § 36-2-301 (2017). In the absence of an agreement or acknowledgment of parentage, the child's mother, among others, may file a complaint to establish parentage. *Id.* § 36-2-305(b)(1), (2) (2017). The goal of any parentage action is to establish paternity. *In re T.K.Y.*, 205 S.W.3d 343, 349 (Tenn. 2006).

"A man is rebuttably presumed to be the father of a child if . . . [g]enetic tests have been administered as provided in § 24-7-112, an exclusion has not occurred, and the test results show a statistical probability of parentage of ninety-five percent (95%) or greater." Tenn. Code Ann. § 36-2-304(a)(5) (2017); *see also* Tenn. Code Ann. § 36-1-102(28)(A)(iv), (B) (2017) (defining legal parent to include a man adjudicated the legal father of a child based on genetic testing conducted pursuant to Tenn. Code Ann. § 24-7-112). This presumption "is based upon the modern-day availability and accuracy of genetic testing." *In re T.K.Y.*, 205 S.W.3d at 350.

Paternity tests in parentage actions are governed by Tennessee Code Annotated § 24-7-112. Tenn. Code Ann. § 36-2-309(a) (2017). In any contested paternity action,

3

the court is authorized to order the parties and the child "to submit to genetic tests to determine the child's parentage." *Id.* § 24-7-112(a)(1)(A) (2017). The court-ordered testing must be conducted by an accredited laboratory, and the test results are admissible in evidence as provided in subsection (b). *Id.* § 24-7-112(a)(3), (4).

Subsection (b) governs both the admissibility of the paternity test report and its evidentiary effect. The report "is admissible without the need for any foundation testimony or other proof of the authenticity or accuracy of the test unless a written objection is filed with the court and served upon all parties thirty (30) days prior to the date of the hearing." *Id.* § 24-7-112(b)(2)(A). And if the test results show a statistical probability of paternity of ninety-five percent or greater, a rebuttable presumption of paternity arises. *Id.* § 24-7-112(b)(2)(B).

If the test results show a statistical probability of paternity of ninety-nine percent or greater, the presumption of paternity is nearly conclusive. *See id.* § 24-7-112 (b)(2)(C). In such a case, the putative father may only rebut the presumption "by filing a motion with the tribunal and establishing upon clear and convincing evidence one (1) or more of only the following circumstances":

> (i) The putative father had undergone a medical sterilization procedure prior to the probable period of conception, or other medical evidence demonstrates that he was medically incapable of conceiving a child during the probable period of conception;
> (ii) That the putative father had no access to the child's mother during the probable period of conception;
> (iii) That the putative father has, or had, an identical twin who had sexual relations with the child's mother during the probable period of conception; or
> (iv) The putative father presents evidence in the form of an affidavit that another man has engaged in sexual relations with the mother of the child in question during the period of probable conception. In this case, the court shall order genetic testing of that other man in conformity with this section. The results of that genetic test must indicate that the other man has a statistical probability of paternity of ninety-five (95%) or greater to establish an effective defense pursuant to this subdivision.

*Id.*

Once paternity is established, the court must issue an order adjudicating parentage and resolving such issues as custody, visitation, and child support. *Id.* § 36-2-311(a).

4

B.

On appeal, Michael J. argues that the juvenile court erred in considering the LabCorp report because he was entitled to a de novo hearing. *See* Tenn. Code Ann. § 37-1-107(e) (2014). We agree that juvenile court review of magistrate decisions is de novo.[2] *See Kelly v. Evans*, 43 S.W.3d 514, 515-16 (Tenn. Ct. App. 2000). But the juvenile court hearing was de novo. The juvenile court conducted an evidentiary hearing during which the parties testified and were allowed to submit evidence. *See Massey v. Casals*, 315 S.W.3d 788, 798-99 (Tenn. Ct. App. 2009) (holding that a juvenile court hearing, which included witness testimony and the submission of documentary evidence, met the statutory requirement); *Gilland v. Gilland*, No. M2002-02276-COA-R3-CV, 2004 WL 2583885, at *6 (Tenn. Ct. App. Nov. 9, 2004) (holding that a full evidentiary hearing is a de novo hearing).

We conclude that the court erred in taking judicial notice of the LabCorp test.[3] But the error was harmless because Mother's copy of the report was clearly admissible under Tennessee Code Annotated § 24-7-112(b)(2)(A). *See* Tenn. R. App. P. 36(b). The test was ordered by the magistrate in a contested paternity action. And, as noted above, the written report of a court-ordered paternity test is admissible "unless a written objection is filed with the court and served upon all parties thirty (30) days prior to the date of the hearing." Tenn. Code Ann. § 24-7-112(b)(2)(A). As Michael J. failed to file any written objections to the LabCorp report, Mother's copy of the report was admissible as evidence in the juvenile court hearing. *See State v. Garrett*, No. 01A01-9506-JV-00262, 1996 WL 252317, at *1 (Tenn. Ct. App. May 15, 1996) (holding test report admissible in the absence of timely-filed objection); Tenn. R. Evid. 1003 ("A duplicate is admissible to the same extent as an original unless a genuine question is raised as to the authenticity of the original.").

---

[2] Although, at the time Michael J. requested a rehearing, the statute merely provided for "a hearing" before the juvenile court, our courts interpreted the statutory language as requiring a de novo hearing. *See* Tenn. Code Ann. § 37-1-107(e) (2014); *Kelly v. Evans*, 43 S.W. 3d 514, 515-16 (Tenn. Ct. App. 2000). After recent amendments, the statute now expressly provides for a de novo hearing. *See* Tenn. Code Ann. § 37-1-107(d) (Supp. 2017) ("Any party may, within ten (10) days after entry of the magistrate's order, file a request with the court for a de novo hearing by the judge of the juvenile court.").

[3] Tennessee Rule of Evidence 201 limits judicial notice to adjudicative facts. Tenn. R. Evid. 201(a). "[A]djudicative facts help to 'explain who did what, when, where, how, and with what motive and intent.'" *Counts v. Bryan*, 182 S.W.3d 288, 292 (Tenn. Ct. App. 2005) (alteration in original) (quoting NEIL P. COHEN ET AL., TENNESSEE LAW OF EVIDENCE § 2.01[3] (4th ed. 2000)). Additionally, the fact must be one that is "not subject to reasonable dispute" and must be "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Tenn. R. Evid. 201(b). The LabCorp report does not meet those criteria.

Because the LabCorp report showed a statistical probability of paternity of ninety-nine percent or greater, Michael J. had an extremely high burden of proof to rebut the statutory presumption of paternity. *See* Tenn. Code Ann. § 24-7-112(b)(2)(C). He failed to meet that burden. The evidence in this record supports the juvenile court's paternity determination.[4]

C.

Mother seeks an award of attorney's fees as damages for a frivolous appeal. *See* Tenn. Code Ann. § 27-1-122 (2017). The statute authorizing an award of damages for a frivolous appeal "must be interpreted and applied strictly so as not to discourage legitimate appeals." *See Davis v. Gulf Ins. Grp.*, 546 S.W.2d 583, 586 (Tenn. 1977) (citing the predecessor to Tennessee Code Annotated § 27-1-122). A frivolous appeal is one "utterly devoid of merit." *Combustion Eng'g, Inc. v. Kennedy*, 562 S.W.2d 202, 205 (Tenn. 1978). We do not find this appeal devoid of merit or perceive that it was taken solely for delay. Thus, we decline to award Mother her attorney's fees on this basis.

**III.**

For the foregoing reasons, we affirm the juvenile court's decision.

_____<br>W. NEAL McBRAYER, JUDGE

---

[4] Michael J.'s second issue on appeal is whether the juvenile court erred in considering the results of the Walgreens test based on the parties' testimony instead of a written report. Even without the Walgreens test results, the evidence supports the juvenile court's paternity determination. Thus, we decline to address his second issue.